UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

___

UNITED STATES OF AMERICA,

    Plaintiff,

  v.                                    Case No.10-CR-0031

CHIENG CHANG VANG,

    Defendant.

___

**DEFENDANT CHIENG CHANG VANG'S SENTENCING MEMORANDUM
AND REQUEST FOR 18 U.S.C. § 3553 SENTENCE**

___

**NOW COMES** the Defendant, Chieng Chang Vang, by counsel, Alex Flynn, and submits this Sentencing Memorandum and Request for 18 U.S.C. § 3553 Sentence. For the reasons stated below, Chieng Vang respectfully requests that the Court, after the factors outlined in 18. U.S.C. § 3553, including Chieng Vang's character and lack of criminal history, sentence him to the mandatory minimum, ten-year sentence of imprisonment provided in 21 U.S.C. § 841(b)(1)(A)(viii).

**REQUEST FOR NON-GUIDELINE SENTENCE
PURSUANT TO TITLE 18 U.S.C. § 3553(a)(2)**

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), a majority of the United States Supreme Court held that the Sixth Amendment's jury trial guarantee prevented judges from finding facts that exposed a defendant to an increased prison sentence. As a remedy, a different majority excised the provision of the Federal sentencing reform act that made the sentencing guidelines mandatory. This majority declared that a sentencing court must still consider the guideline range, but must also consider other directives contained in 18 U.S.C. § 3553(a). That statute directs a sentencing court as follows:

> (a) **Factors to be considered in imposing a sentence.** -- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
>> (1) the nature and circumstance of the offense and the history and characteristics of the defendant;
>>
>> (2) the need for the sentence imposed--
>>
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>>
>>> (B) to afford adequate deterrence to criminal conduct;
>>>
>>> (C) to protect the public from further crimes of the defendant; and,
>>>
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In United States v. Dean, 414 F.3d 725 (7th Cir. 2005), the Seventh Circuit outlined the procedure to be followed by the sentencing court post-Booker. The court said:

> The Supreme Court's decision in Booker requires the sentencing judge first to compute the guidelines sentence just as he would have done before Booker, and then – because Booker demoted the guidelines from mandatory to advisory status – to decide whether the guidelines sentence is the correct sentence to give the particular defendant.

Id.

The court noted that, unlike the sentencing guidelines, the directives of § 3553(a) remain mandatory after Booker. Therefore, the court said,"[t]he defendant must be given an opportunity to draw the judge's attention to any factor listed in § 3553(a) that might warrant a sentence different

2

from the guidelines sentence . . ." Id. The court added that the sentencing judge, after considering the factors listed in § 3553(a), cannot "import his own philosophy of sentencing if it is inconsistent with them."

The court, citing three distinct court cases, described the post-Booker sentencing regime as one "in which the guidelines, being advisory, can be trumped by section 3553(a)." Id., citing Simon v. United States, 361 F. Supp. 2d 35 (E.D.N.Y. 2005); United States v. Kelley, 335 F.Supp 2d 1031 (D.Neb. 2005); United States v. Ranum, 353 F.Supp. 2d 984, 985-86 (E.D. Wis. 2005).

Prior to Booker, sentencing courts were prohibited from considering a whole range of personal characteristics in deciding to impose a sentence outside the applicable guideline range. For example, the court was forbidden to consider: the defendant's age, U.S.S.G. § 5H1.1; his education and vocational skills, U.S.S.G. § 5H1.2; his mental and emotional condition, U.S.S.G. § 5H1.3; his drug and alcohol dependence, U.S.S.G. § 5H1.4; or his lack of guidance as a youth, U.S.S.G. § 5H1.12.

However, the guidelines are now advisory. Since Booker, the guidelines' prohibition against considering these factors cannot be reconciled with the court's continuing obligation under § 3553(a) to consider personal characteristics of the defendant. This was confirmed by the Seventh Circuit in Dean:

> Under Booker the uses that a sentencing judge could make of the factors listed in section 3553(a) were severely circumscribed by the next subsection in order to preserve the mandatory character of the guidelines. 18 U.S.C. § 3553(b). But now that they are advisory, the section 3553(a) remains unchanged, judges will have to consider the factors that the section tells them to consider. "Section 3553(a) remains in effect and sets forth numerous factors that guide sentencing." United States v. Booker, supra, 125 S.Ct. at 766, see also Id. at 764-65. "Booker suggests that the sentencing factors articulated

3

in § 3553(a), which the mandatory guidelines made dormant, have a
new vitality in channeling the exercise of sentencing discretion."
United States v. Trujillo-Terazas, 405 F.3d 814, 819 (10th Cir. 2005).

Id.

In addition to the directives of 18 U.S.C. § 3553(a), there is the requirement of 18 U.S.C. § 3661 that:

> No limitation shall be place on the information concerning the background, character and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

## **ARGUMENT**

1) The estimated forty (40) letters written by Chieng Vang's family and friends (attached hereto, but not submitted via ECF) reveal a man who made an incredibly poor decision to support his wife and young children by selling ecstasy.

2) Attached by hard copy (not submitted via ECF) are Chieng Vang's medical records. Chieng Vang is in poor health. For almost twenty years, Chieng Vang has suffered from paraplegia as a result of a gunshot wound to his spine (L3-L4), suffered when he was fifteen years old. As a result of his disability, Chieng Vang is confined to a wheelchair while he is in custody, and he suffers painful bowel movements and other serious discomfort, including loss of sensation in one of his legs.

3) Also attached (but not submitted via ECF) is Chieng Vang's CV, his college diploma and transcripts demonstrating his excellent grade-point average and academic achievement.

4) The Government has overestimated the amount of drugs that were distributed by Chieng Vang during the existence of the conspiracy charged in the Indictment. The quantities estimated by the Government – over 100,000 ecstasy pills, plus hundreds of grams of "actual"

4

methamphetamine – are, quite simply, astonishing and unreasonable in light of the evidence that was seized during the case and in light of the statements of cooperating co-defendants and alleged co-conspirators.

At the outset, it is important to note that while the Indictment charges a conspiracy involving the distribution of methamphetamine and ecstasy, Chieng Vang is not a methamphetamine distributor. His stock and trade was ecstasy pills, and he distributed not insignificant amounts of ecstasy during the life of the conspiracy charged in the Indictment. The same, however, is not true of methamphetamine; at most, Chieng Vang obtained and provided small quantities of methamphetamine as a favor to his customers – who, unbeknownst to Chieng Vang, were receiving requests for methamphetamine from an undercover Federal agent.

## DISCUSSION

Chieng Vang has pleaded guilty to and been convicted of a conspiracy to distribute methamphetamine and ecstasy, spanning from the end of 2008 to February 2010. Much has been made and will continue to be made of the amounts, weights, and quantities of the drugs which Chieng Vang dealt. However, what will become apparent at the sentencing hearing is that Chieng Vang was an ecstasy pill dealer who dabbled in occasional sales of methamphetamine at the request of one of his customers, who was in turn selling those drugs to an undercover Federal agent. This is not to presented as an excuse for his criminal conduct, but it is offered to show that Chieng Vang is not a classic methamphetamine dealer.

Chieng Vang is thirty-four (34) years old. He is happily married and has a number of children, including a one year old.

When Chieng Vang was thirteen years old, he joined the Asian gangs in California and

remained active with the gangs until the age of 15, when he was sentenced to nine years in juvenile detention for an attempted homicide. Chieng Vang was shot himself as a fifteen-year-old child, with the bullet passing through his stomach and lodging in his spine at the L3-L4 area. As Dr. Graciela Barsaga, M.D., notes in her June 15, 1994 report:

> *Diagnosis: Cauda Equina Syndrome, secondary to spinal cord injury, secondary to gunshot wound, with L3-L4 compression fracture. Patient will require bilateral short-leg braces. Enclosed is his prescription.*

[All Chieng Vang's medical records are appended hereto, and Chieng Vang requests that these records be kept with his Presentence Report, so that an accurate copy of his chronology is available should he require medical treatment while confined to the Bureau of Prisons.]

While in detention, Chieng Vang obtained his college diploma from the Ventura College in California, achieving excellent grades as he did so.

## CONCLUSION

In conclusion, based on Chieng Vang's lack of criminal record, his poor health, his academic accomplishments, and his marriage and family, it is respectfully requested that the Court impose the mandatory minimum, statutory sentence of 120 months. Nothing more is necessary or required in this case. It is submitted the ten-year sentence would reflect the seriousness of the offense, afford adequate deterrence, protect the public, and provide Chieng Vang with needed training and medical care without burdening the taxpayers with the expensive medical care that he will surely require in the future.

Dated at Milwaukee, Wisconsin, this 18th day of February, 2011.

        s/ Alex Flynn
        Alex Flynn, State Bar No. 01015056
        Alex Flynn & Associates, S.C.
        1223 N. Prospect Ave.
        Milwaukee, WI 53202
        Telephone: 414/276-7400
        Fax: 414/276-5525
        E-mail: afa@core.com

AF/jfw

Enclosures

cc:    Chieng Vang
       AUSA William Lipscomb
       Daniel Dragolovich

7

Case 2:10-cr-00031-LA   Filed 02/18/11   Page 7 of 7   Document 239