UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATS OF AMERICA,

    Plaintiff,

-vs-                                      Case No. 10-CR-31

CHER VANG,

    Defendant.

### DEFENDANT'S SENTENCING MEMORANDUM AND OBJECTION TO PRE-SENTENCE REPORT

The Defendant, Cher Vang, by his attorney, Thomas J. Erickson, pursuant to the Due Process provisions of the Fifth Amendment to the United States Constitution as well as Rule 32(c) of the Federal Rules of Criminal Procedure, respectfully submits the following Sentencing Memorandum which requests a downward departure from the sentencing guidelines based on an analysis of factors set forth in 18 U.S.S.G. s. 3553(a).

It is expected that the pre-sentence report will conclude, upon application of the 2010 Sentencing Guidelines Manual, that the Defendant is in a guideline imprisonment range of 78 to 97 months based on an offense level of 30 and a criminal history category II. Pursuant to the plea agreement, the government will recommend a sentence within the sentencing guidelines. The Defendant is requesting a sentence of sixty months imprisonment, the statutory mandatory minimum sentence.

**I.    SENTENCING METHODOLOGY**

Post-*Booker*, a court may impose a sentence with the applicable guideline range, or

impose a non-guideline sentence if it is justified by. 3553(a) factors. *See United States v. Crosby*, No 03-1675, 2005 U.S. App. LEXIS 1699 at 25 (2d Cir. Feb 2, 2005).

Title 18 U.S.C. s. 3553(a) requires the court to consider seven factors:

1. The nature and circumstances of the offense and history of characteristics of the defendant;

2. The need for the sentence imposed

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3. The kinds of sentences available;

4. The sentencing range established by the guidelines;

5. Any pertinent policy statements issued by the Sentencing Commission;

6. The need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

7. The need to provide restitution to the victims of the offense.

After considering all of these factors, a court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." *United States v. Galvez-Barrios*, No. 04-CR-14, 2005 U.S. Dist. LEXIS 1997, at *16-17 (E.D. Wis. Feb. 2, 2005).

In *Gall v. United States*, 552 U.S.-, 2007 WL 4292116 (Dec. 10, 2007), the Supreme Court rejected an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range. The Court made it clear that as long as the record demonstrates that a district court has considered the s. 3553(a) factors and supported its sentence with a rationale that is supported by the record, the sentence shall stand.

VIII. SENTENCING ANALYSIS

The s. 3553(a) factors can be grouped into three general categories: the nature of the offense, the character of the defendant, and the needs of the public and victims of the offense.

**The Nature of the Offense**

The Defendant is one of sixteen people charged in connection with a methamphetamine and ecstasy trafficking operation which was primarily operated by MOD gang members in Milwaukee and Minneapolis. The Defendant lived in Minneapolis and was brought into this conspiracy by his association with Chieng Chang Vang, aka "Moon", a leader of the Minnesota MODs.

The Defendant has been addicted to meth and ecstasy since 2007. He was taking both drugs on a daily basis in the years leading up to his arrest in February, 2010. His addiction is the reason that the Defendant became involved in the drug conspiracy. The Defendant often bought his personal use meth and ecstasy directly from Moon. Through his drug use, the Defendant became aware of other parties who wanted to buy meth or ecstasy so he would obtain larger than personal use amounts of pills from time to time.

He then would be able to use the profit he made from peddling the extra pills to support his drug habit.

As numerous recorded calls show, the Defendant often requested Moon to front him pills. Moon became increasingly frustrated with the Defendant's unreliability in paying him back and rarely gave the Defendant any drugs on consignment by November, 2009.

In November, 2009, Moon asked the Defendant to drive with him to Milwaukee from Minneapolis for the purpose of Moon delivering a large amount of pills to Chee Vang. The Defendant went along with Moon. He received no payment for accompanying Moon. On December 29, 2009, Moon arranged for the Defendant to drive a shipment of pills to Chee Vang in Milwaukee. Moon fronted the Defendant a jar (100) of ecstasy pills and paid for his expenses. The Defendant agreed to make the trip because Moon was his main source for drugs which he needed to feed his addiction. Clearly, the Defendant was a minor participant in the conspiracy.

From the tenor of the phone calls between Moon and the Defendant, it is clear that Moon considered the Defendant to be a flunky who could easily be manipulated because of his drug problem. The Defendant denies that he was ever a member of MOD. He believes that the Milwaukee MODs perceived him to be a member because of his association with Moon.

Finally, the Defendant does not agree that the relevant conduct is 14,500 pills. The Defendant believes that it is closer to 7,000 primarily because he maintains that the trip he made in December was the delivery of 4,500 pills, not 8,000 pills. Nonetheless,

the Defendant understands that the relevant conduct amount of pills he posits does not change his guideline. The defense does not expect this issue to be litigated.

The Defendant asks that the court consider these factors in mitigation when determining a sentence sufficient but not greater than necessary to serve the purposes of sentencing.

**The Character of the Defendant and the Needs of the Public**

The Defendant's life has largely been a struggle but nonetheless he has many positive character attributes. He was born in a refugee camp in Laos. When he was two years old, his parents emigrated to the United States and settled in St. Paul. The Defendant dropped out of high school because he preferred to work. His work history was relatively good including working full-time for three years at a packaging company from 2003 to 2006.

He began drinking alcohol and using drugs in his late teens. In 2007, he became seriously addicted to methamphetamine and had been smoking meth and using ecstasy on a daily basis from 2007 until his arrest in 2010. He worked very little during this time. By the Defendant's own admission, his prolonged drug abuse has significantly affected his ability to focus and has curtailed his memory. He is eager for drug abuse treatment. During the past several months of drying out at the Dodge County Jail, his mental prowess has begun to improve. Significantly, he obtained his HSED on December 17, 2010, while incarcerated which is a major accomplishment for the Defendant and a sign of his ability to recover and rehabilitate himself.

Although the Defendant has felt the cultural strain of being a young man growing up in America with traditional Hmong parents, he remains close to his family. Several

letters attest to the esteem with which he is held by various friends and family members who invariably describe the Defendant as kind and generous.  Also, the letters reflect that the Defendant was awarded for heroism for his life-saving efforts in 2006.  It should be noted that the Defendant is one of thirteen children.  He is the only one of all the siblings to be in any trouble with the law.

As a further mitigating factor, the Defendant has been incarcerated since February, 2010, or a period of 14 months in the Dodge County Jail.  This prison setting is extra-punitive to the extent that there is very little programming, poor access to inmate services including phone calls and visits.

The Defendant, at age 32, will not pose a threat a danger to the public nor is he likely to re-offend after an imprisonment of five years.  The Defendant's criminal conduct was not motivated by power or control or greed; it was motivated by a chronic drug addiction.  Upon rehabilitation, the Defendant will be able to live productively in the community and the public will be protected from further crimes of the Defendant.

The Defendant's great rehabilitative need is to participate in substance abuse counseling.  The Defendant requests that the court recommend that the Bureau of Prisons consider him for its intensive 500 hour drug treatment program.

While fully recognizing the severity of the Defendant's conduct and appreciating its potential danger, the Defendant asks the court to consider his lack of a substantial criminal record, the mitigating qualities of the nature of the offense, and positive character traits as factors in determining a fair sentence.

## III. CONCLUSION

For the other reasons so described, the court should find that there are mitigating circumstances in this case which are not adequately taken into consideration by the Sentencing Commission in formulating the guidelines and which warrant a downward departure. The Defendant asks the court to consider a sentence of 60 months.which is sufficient but not greater than necessary to serve the purposes of sentencing.

Dated this 7th day of April, 2011.

Respectfully submitted,

/s/
Thomas J. Erickson
Attorney for Defendant

Address and Phone:
611 N. Broadway, Ste. 200
Milwaukee, WI 53202
(414) 271-0678